IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>v.<br><br>JEFFREY CHARLES ZANDER,<br><br>          Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S [145] RULE 29 MOTION FOR ACQUITTAL**<br><br>Case No.: 2-10-CR-1088-DN-EJF<br><br>District Judge David Nuffer |

This matter came before the court on Defendant Jeffrey Zander's ("Zander") rule 29 motion for acquittal.[1] The matter was fully briefed, including the filing of supplemental briefs on the applicability and effect of *United States v. Lake* on the issues raised in Zander's motion. After considering the parties' arguments, and based upon the reasoning set forth herein, Zander's motion is denied.

## **BACKGROUND**

On March 5, 2013, a jury convicted Zander of two counts of mail fraud, two counts of wire fraud, one count of money laundering, and three counts of willful failure to file tax returns for the years 2005, 2006, and 2007, respectively. After trial, Zander filed his rule 29 motion,[2] arguing that the evidence presented at trial was insufficient to sustain the jury's convictions on the mail and wire fraud counts. Zander further argued that because there was insufficient evidence to convict for the mail and wire fraud counts, the money laundering conviction should also be set aside.

---

[1] Docket no. 145, filed on March 12, 2013.

[2] *Id.*

Relying on the language of the respective mail and wire fraud statutes, Zander claims that because he did not personally use mail or wire services, or cause mail or wire services to be used to further the fraudulent scheme, he cannot be guilty of mail and wire fraud.  Zander argues that it was legally impossible to cause the letters to be mailed and wires to be transmitted because he was removed from the independent tribal decisions related to the Integrated Resource Management Plan ("IRMP") proposals submitted to the Bureau of Indian Affairs ("BIA").  Relying on *Parr v. United States*[3] and *United States v. Lake*,[4] Zander also claims that because the letters and wires were required by law to be sent and because they did not contain any false or fraudulent statements, insufficient evidence supports the mail fraud convictions.

Zander also contends that exculpatory evidence acquits him of the mail and wire fraud convictions.  Specifically, Zander relies on the testimony of Ms. Richards that she wrote, signed, and mailed the letters solely for the purpose of compliance with the requirements of federal law, and that she did not know Zander and was not influenced by him in mailing the letters.  With regard to the wire fraud counts, Zander argues that the testimony at trial shows that the wires were not made by Zander or by someone under his control or influence.  Zander argues that this testimony affirmatively shows that he cannot be found guilty of mail or wire fraud.

The USA opposes Zander's motion.  It argues that ample evidence at trial supports the jury's verdict convicting Zander on all counts, namely because Zander set in motion through the drafting of grant proposals a course of action which he knew or reasonably should have known would result in the use of mail and wire transmissions that furthered his fraudulent scheme.  The USA argues that the evidence at trial shows that Zander knew or reasonably should have known that the use of mail and wires would occur as a result of his fraudulent scheme because Zander

---

[3] 363 U.S. 370 (1960).

[4] 472 F.3d 1247 (10th Cir. 2007).

had orchestrated this scheme several times previously. Because the mailings and wire transmissions were incident to an essential part of Zander's scheme to defraud, the USA contends that the evidence at trial was sufficient to support the convictions.

## **DISCUSSION**

Zander carries a heavy burden to successfully bring a rule 29 motion for acquittal. The court must determine whether sufficient evidence was presented "from which a jury could find the defendant guilty beyond a reasonable doubt."[5] When evaluating a rule 29(c) motion, the court must "view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government"[6] and "may neither weigh conflicting evidence nor consider the credibility of witnesses."[7] Acquittal notwithstanding the jury's verdict is proper "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8]

The thrust of Zander's rule 29 motion stems from his contention that because he did not actually mail or exert control or influence over the mailings and wire transfers, the government failed to prove the elements of mail and wire fraud required by the respective statutes. Zander argues that not only did the government not prove the essential elements, but Zander claims that the evidence at trial exculpates him of the mail and wire fraud counts. Zander also argues that because the mailings did not contain false or fraudulent statements, the mailings cannot satisfy the elements of the mail fraud statute under the case of *United States v. Lake*. None of these arguments, however, have merit for the reasons set forth below.

---

[5] *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir. 2000).

[6] *United States v. Haslip*, 160 F.3d 649, 652-53 (10th Cir. 1998).

[7] *United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997).

[8] *United States v. Haslip*, 160 F.3d 649, 652-53 (10th Cir. 1998).

### A. Evidence Supports the Mail Fraud Convictions.

Mail fraud requires the use of the mail to execute a fraudulent scheme.[9] However, it does not require evidence that Zander himself mailed or caused to be mailed the letters associated with the fraudulent scheme. Rather, to establish this necessary element of mail fraud, the government must prove that Zander "set forces in motion which … would involve mail uses."[10] Indeed, the government is only required to prove that Zander was acting "with the knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended."[11]

The evidence presented by the government was sufficient to sustain the jury's convictions of mail fraud. This was not the first time that Zander perpetuated this fraudulent scheme through the tribe. The evidence showed that Zander was involved in the grant process five times over a period of approximately two years. Zander was familiar with the process and could reasonably foresee that the mail would be used to perpetrate his fraudulent scheme as that same method of communication was used by the tribe and the BIA to process prior grant proposals prepared by Zander on behalf of the tribe.

The government is not required to prove that Zander himself directed or exerted meaningful control over the use of the mail to perpetuate the fraudulent scheme because that "places a much higher burden on the government to prove causation" than is required under the

---

[9] 18 U.S.C. § 1341.

[10] *United States v. Ruiz*, 589 F.3d 1310, 1314 (10th Cir. 2009) (citations omitted).

[11] *Pereira v. United States*, 347 U.S. 1, 8-9 (1954).

law.[12]  Reasonable foreseeability is sufficient, and the evidence supports that in this case.  The evidence presented at trial was sufficient to support the mail fraud convictions.

      B.   <u>The Evidence Supports the Wire Fraud Convictions.</u>

The wire fraud analysis is similar to the mail fraud analysis discussed above.  The wire fraud statute required the government to prove essentially the same four elements as the mail fraud counts, with one exception – instead of use of the mails, the government was required to prove that Zander used or caused the use of interstate or foreign wires to perpetuate the fraudulent scheme.[13]  The government was required to prove that Zander "had actual knowledge that the wires would be used in the ordinary course of business or that he reasonably should have foreseen such use."[14]  Because the elements of the mail fraud and wire fraud statutes "are virtually identical, … [i]nterpretations of § 1341 are authoritative in interpreting parallel language in § 1343."[15]

The evidence presented at trial was sufficient to sustain the jury's conviction on the wire fraud counts.  The evidence showed that Zander himself used wire transmissions in communicating with the BIA through faxes related to the grant process.  The evidence supported the jury's finding that given Zander's understanding of how the grant application and approval process works, he knew or should have known that wire transmissions would be used to perpetuate his fraudulent scheme.

---

[12] *Ruiz*, 589 F.3d at 1314.

[13] 18 U.S.C 1343.

[14] *United States v. Weiss*, 630 F.3d 1263, 1271 (10th Cir. 2010).

[15] *Id*. (quoting *United States v. Lake*, 472 F.3d 1247, 1255 (10th Cir. 2007)).

C.  The Mailings Are Not Required to Contain False or Misleading Statements.

Zander also argues that the mailings do not satisfy the mail fraud statute because they were done to comply with federal law[16] and because they did not contain false or fraudulent statements.  Zander relies on the holdings of *Parr v. United States*[17] and *United States v. Lake*[18] to support his argument.  These cases are distinguishable; Zander's reliance on them is misplaced.

In *United States v. Parr*, the United States Supreme Court held that a mail fraud conviction was improper because the mailings at issue in that case were "made or caused to be made under the imperative command of duty imposed by state law" and because they did not constitute "false pretenses and misrepresentations to obtain money."[19]  The scheme at issue in *Parr* involved legally compelled mailings related to the assessment and collection of taxes by the school district.[20]  The taxes collected as a result of the mailings were misappropriated by the defendants; without the mailings, the fraud could not have occurred.  Notwithstanding this fact, the Court held:

> [W]e think it cannot be said that mailings made or caused to be made under the imperative command of duty imposed by state law are criminal under the federal mail statute, even though some of those who are so required to do the mailing for the District plan to steal, when or after received, some indefinite part of the moneys.
>
> Nor, in the light of the facts in this record, can it be said that the mailings … constituted false pretenses and misrepresentations to obtain money.[21]

---

[16] Ms. Richards testified that the specific law that she was complying with was Public Law 638.

[17] 363 U.S. 370 (1960).

[18] 472 F.3d 1247 (10th Cir. 2007).

[19] *Parr*, 363 U.S. at 391-92.

[20] *Id.* at 389.

[21] *Id.* at 391-92.

6

The holding in *Parr*, however, is distinguishable from the facts and circumstances surrounding Zander's fraudulent scheme. Indeed, the school district in *Parr* would have sent the mailings regardless of whether the defendants in that case were involved in the fraudulent scheme.[22] In contrast, the evidence in this case shows that but for Zander's fraudulent scheme, the mails and wires would have never been sent. Federal law required the mailings and wires *only because* the BIA received the grant applications – grant applications that were prepared and set in motion as an instrumental and critical part of Zander's fraudulent scheme. The mailings were incident to an essential part of Zander's scheme.

In *United States v. Lake*, two executives of a large public utility company were charged with and convicted of wire fraud and money laundering, among other things, related to allegations that they engaged in a pattern of fraud and deceit to "milk the company for all they could." The government's case hung on the allegation that the defendants failed to report, in required filings to the SEC, their personal use of corporate aircraft. At trial, the government failed to show that the reports contained any false or fraudulent statements, and the evidence showed that identical reports would have been filed with the SEC even in the absence of the alleged fraudulent scheme. As noted by the court, "[t]he reports were filed [by the public utility] because they had to be, not because of any unlawful scheme."[23] Consequently, the court held that "we cannot see how their filing advanced the alleged fraudulent scheme or how one could say that the defendants' purpose in filing them was to advance the scheme."[24]

---

[22] *See Schmuck v. United States*, 489 U.S. 705, 713 n. 7 (1989) (holding that "the mailings of the tax documents in *Parr* were the direct product of the school district's state constitutional duty to levy taxes … and would have been made regardless of the defendants' fraudulent scheme …")

[23] *Lake*, 472 F.3d at 1255.

[24] *Id*. at 1255-56.

In contrast to the reports in *Lake*, the mailings and wires transmissions would not have occurred in this case but for Zander's fraudulent scheme. Unlike the corporation in *Lake*, which was required by the SEC to file the annual reports at issue in that case, the BIA was only required to utilize the mail and wires because of Zander's scheme.

The case of *Schmuck v. United States* is instructive on this issue of legally required, but innocent mailings. There, the defendant, Mr. Schmuck, purchased used cars, rolled back their odometers, and then resold the cars to retail dealers. Of course, the prices paid by the dealers were artificially inflated because of the low-mileage readings. These retail dealers, which were not knowingly part of the fraudulent scheme, then re-sold the cars to unwitting consumers. In order to re-sell the cars, the retail dealers who purchased the cars from Mr. Schmuck mailed title applications to the department of transportation on behalf of the retail consumers. Without these title applications, the dealers could not re-sell the cars. Mr. Schmuck was charged with mail fraud, among other things, and relied on *Parr* to argue that innocent mailings, which were made *after* the actual fraud occurred,[25] could not be used to satisfy the required elements of the mail fraud statute. The Court disagreed and sustained the mail fraud convictions, holding that "[a]lthough the registration-form mailings may not have contributed directly to the duping of either the retail dealers or the customers, they were necessary to the passage of title, which in turn was essential to the perpetuation of Schmuck's scheme."[26]

Understanding the complexities and details of Zander's scheme, the critical distinctions between *Parr* and *Lake* are readily apparent. The mailings and wires in this case, though devoid of any false or fraudulent statements, were incident to Zander's fraudulent scheme. While the

---

[25] Though not argued by Mr. Schmuck, these mailings were also required by law to effectuate the transfer of title.
[26] *Schmuck*, 489 U.S. at 712.

law required the mailings and wire transmissions, this legal requirement only arose because of Zander's fraudulent scheme.

The evidence presented at trial supports the jury's convictions, and shows that Zander knew or should have known that the mails and wires would be used to or be incident to the perpetuation of his fraudulent scheme. Because the evidence was sufficient to sustain the mail and wire fraud convictions, the jury's conviction on the money laundering count is likewise sustained. The evidence presented at trial was sufficient to support the mail fraud, wire fraud, and money laundering convictions.

Based on the foregoing, Zander's Rule 29 Motion for Acquittal is hereby DENIED.

Signed October 2, 2013.

BY THE COURT:

David Nuffer
United States District Judge